UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SHEILA R. MURRAY,**

    Plaintiff,

vs.                                **Case No. 8:05-CV-857-T-EAJ**

**JO ANNE B. BARNHART,
Commissioner of
Social Security,**

    Defendant.
_____/

**FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g)and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB").[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 9)

substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff filed an application for DIB benefits on October 4, 2002, alleging disability beginning on July 6, 2000. (T 49) Plaintiff's claim was denied initially, upon reconsideration, and by the Administrative Law Judge ("ALJ") in a decision issued on June 25, 2004. (T 12-21) The Appeals Council declined to review

the ALJ decision (T 3-4), making the ALJ's decision the final decision of the Commissioner.

The ALJ found that Plaintiff was not eligible for DIB benefits because she was not disabled at any time through the ALJ's decision on June 25, 2004. (T 19-21) Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits. Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff, 49 years old at the time of the administrative hearing on April 13, 2004, has a high school education and two years of college. (T 65, T 302) She has past relevant work as a licensed practical nurse ("LPN"). (T 60, 65, 76) Plaintiff asserts that she became disabled on July 6, 2000 due to a combination of impairments including arthritis, bursitis, fibromyalgia, sleep apnea, temporomandibular joint syndrom ("TMJ"), depression, anxiety, tendonitis, posterior tibial insufficiency and lumbar radiculopathy. (T 47, 59)

Following the administrative hearing on April 13, 2004, the ALJ found that Plaintiff suffered from trochanteric bursitis, sleep apnea, asthma, TMJ, status post gynecological surgery, left shoulder bursitis, lumbar strain and gastro-esophageal reflux disease. (T 20) The ALJ determined that the above impairments are severe, but that Plaintiff's impairments or combination of

impairments do not meet or medically equal the impairments listed in Appendix 1, Subpart P of Regulations No. 4.  (T 20)  The ALJ held that Plaintiff could not perform her past relevant work, but that she could perform a wide range of light work and a full range of sedentary work.[2]  (T 20) Specifically, the ALJ noted that Plaintiff is limited to carrying up to 20 pounds occasionally and 10 pounds frequently, can sit, walk and stand for up to 6 hours of an 8-hour day.  In addition, the ALJ held that Plaintiff could climb, balance, stoop, kneel, crouch, and crawl only occasionally and must avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation.  (Id.)  Based on Plaintiff's exertional capacity for light work, age, education and prior work experience, the ALJ relied on the Medical-Vocational Rules found in the Social Security regulations to find that Plaintiff was not disabled.  (T 20)  In reaching the conclusion that Plaintiff had not been under a "disability" since July 6, 2000, the ALJ held that Plaintiff's statements regarding her symptoms and impairments were not wholly credible.  (T 16, 20)

---

[2] Light work, defined at 20 C.F.R. §§ 404.1567(c), 416.967(c), involves the lifting of not more than twenty pounds occasionally with frequent lifting and carrying of objects weighing up to ten pounds.  Sedentary work, defined at 20 C.F.R. §§ 404.1567(a), 416.967(a), involves the lifting of not more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools.

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

**II.**

A. Plaintiff contends that the ALJ failed to consider fully and adequately all of her severe impairments and their effect on her ability to perform in the workplace. (Dkt. 27 at 7) Specifically, Plaintiff alleges the ALJ made no findings as to the severity of Plaintiff's vision problem, obesity and fibromyalgia.[3] (Dkt. 17 at 9)

The Regulations provide a general definition of a "severe" impairment:

> You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. . . .

20 C.F.R. § 416.920( c). An impairment is "not severe" only if it is a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the individual's ability

---

[3] Plaintiff also asserts that the ALJ failed to consider the severity of Plaintiff's depression, headaches and subjective pain complaints. (Dkt. 17 at 9) Nevertheless, Plaintiff fails to present any factual evidence or legal argument to support her claims. (Id.) Therefore, in light of Plaintiff's failure to develop these claims adequately, the court will not analyze these conclusory arguments.

to do basic work activities, irrespective of age, education or work experience. Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). However, a diagnosis or mere showing of "a deviation from purely medical standards of bodily perfection or normality" is insufficient to establish a severe impairment. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

1.  Plaintiff's Vision Problem

Plaintiff asserts that the ALJ erred in determining that Plaintiff's vision impairment was not severe because Plaintiff failed to wear her contact lenses to the consultative examination. (Dkt. 17 at 9) Plaintiff contends that her vision problem is a severe impairment based upon a finding by Robert B. Burchett, M.D. ("Dr. Burchett"), a consulting physician.

Following an examination of Plaintiff, Dr. Burchett noted that Plaintiff had decreased visual acuity secondary to keratoconus. (T 200) According to Plaintiff, the condition of keratoconus is not necessarily corrected by the use of contact lenses and the ALJ erred by failing to conclude that her keratoconus affected her ability to work.

There is no merit to Plaintiff's position. In the decision, the ALJ discussed Plaintiff's vision problem as follows:

6

> The state agency reviewer gave some visual restrictions, which are not part of the residual functional capacity established in this decision. However, the claimant was not wearing her contact lenses at the time of Dr. Burchett's examination, which noted uncorrected vision of 20/50 OD, 20/200 OS, and 20/100 OU. Her near and far visual acuity would be much less impaired with proper eyewear, which she possesses, and the undersigned has therefore withdrawn those limitations.

(T 18)

In this case, Plaintiff never listed her vision problem on any of her applications forms or at the hearing as affecting her ability to work. (T 47, 59, 71-72, 93-103, 298-322) Likewise, the record is devoid of any evidence indicating that her vision problem is a significant impairment. None of the Plaintiff's treating physicians or the consultative examiner identified her keratoconus as causing functional limitations or prevented her from doing work-related activities. (T 106, 287, 198-200) Moreover, Plaintiff reports that she is able to drive, prepare meals, shop, and perform household chores. (T 84-85, 89, 100) Plaintiff never alleged that her vision impairment prevented her from driving, doing yard work, reading or watching television.[4] In fact, Plaintiff lists reading as one of her hobbies. (T 90, 101) Thus, there is no merit to support Plaintiff's claim that

---

[4] Plaintiff alleged that her driving was impaired by the pain in her wrists and hands and drowsiness and not due to vision problems. (T 90, 101)

her keratoconus prevented her from performing substantial gainful activity. Accordingly, the ALJ did not err in finding that Plaintiff's vision problem was not a severe impairment.

2. Plaintiff's Obesity

Plaintiff also argues that the ALJ erred in not finding that she suffered from the severe impairment of obesity as her weight body mass is within in the obese range established by the National Institutes of Health Clinical Guidelines. (Dkt. 17 at 13) According to her medical records, on October 23, 2003, Plaintiff's height was 5 feet and 7 inches and her weight was 220 pounds. (T 199) Further, she alleges that "certain of the signs and symptoms" set forth in her applications and at the hearing "can be reasonably attributed" to her obesity. (Dkt. 17 at 13) To support her claim, Plaintiff emphasizes that when Dr. Burchett performed a consultative examination on Plaintiff, he concluded she was obese and had poor pedal pulses. (Id.)

In this case, even assuming Plaintiff's weight fell within the applicable definition of obesity, Plaintiff did not claim obesity as an impairment in her applications or at the hearing. (T 47, 59, 71-72, 93-103, 298-322) There is nothing in Plaintiff's medical records to suggest that Plaintiff's treating physicians determined that her obesity caused functional

limitations.[5]  (T 106-287)  Similarly, although Dr. Burchett diagnosed Plaintiff with obesity and noted that her "pedal pulses are poor," he did not report that her obesity interfered with her ability to perform basic work activities.  (T 198-200)  In fact, Dr. Burchett concluded that (1) Plaintiff's range of motion in the lumbar spine, motor skills, extremities were normal; (2) there was no significant instability, ankylosis, deformity, enlargement or effusion of Plaintiff's joints; (3) there was no loss of function in any of Plaintiff's joints; (4) Plaintiff's gait was relatively normal and she did not need an assistive device; and (5) Plaintiff was fully weight bearing on her feet and had only mild difficulty getting on and off the examining table and rising from a chair.  (T 199-200)

Notably, Plaintiff does not specify how her obesity impaired her ability to work, but merely speculates that her symptoms can reasonably be attributed to her weight.  (Dkt. 17 at 13)  A claimant's generalized assertions that her weight causes or exacerbates her impairments is not sufficient evidence to require a remand.  See Wind v. Barnhart, 133 Fed. Appx. 684, 690-91 (11th

---

[5] During an examination of Plaintiff by Joel C. Silverfield ("Dr. Silverfield") on October 23, 2000, Dr. Silverfield noted that Plaintiff was obese.  (T 268)  However, he provided no indication that her obesity caused functional limitations.  (Id.)

...

Cir. 2005)(no evidence in the record that claimant's obesity affected her ability to perform work-related activities).

Further, Plaintiff's daily activities belie her claim that her obese condition was severe and limited her activities. Plaintiff reported that she could prepare her own meals, shop, perform household chores and occasionally do telephone volunteer work. (T 84-84, 88-89, 100)  Thus, because Plaintiff did not allege obesity as an impairment and did not produce any objective evidence to establish that her obesity, alone or in combination with other impairments, prevented her from working, the ALJ's failure to discuss obesity is not a basis for remand or reversal. See James v. Barnhart, 2006 U.S. App. LEXIS 9571 *8 n. 2 (11th Cir. Apr. 17, 2006)(ALJ did not err in failing to find obesity was a severe impairment where there was no medical evidence to support claim).

3. <u>Plaintiff's Fibromyalgia</u>

Plaintiff contends that the ALJ failed to consider adequately Plaintiff's diagnosis of fibromyalgia. (Dkt. 17 at 10-12)  In particular, Plaintiff argues that the ALJ improperly rejected the treating physician's opinion because it was not based upon a rheumatology evaluation. (Dkt. 17 at 10)  Plaintiff further asserts that the ALJ incorrectly discounted the treating physician's diagnosis of fibromyalgia because of the lack of

10

pertinent laboratory testing and the lack of evidence regarding the classic "trigger points" of the syndrome. (Id.)

In her decision, the ALJ acknowledged that Plaintiff's treating physician, Dr. Silverfield, diagnosed Plaintiff with fibromyalgia. (T 17)  In rejecting Dr. Silverfield's opinion, the ALJ reasoned that:

> Ms. Murray has referred to the diagnosis for fibromyalgia suggested by Dr. Silverfield beginning May 14, 2003, but this opinion is not supported by a rheumatology evaluation, pertinent laboratory testing, or the classic "trigger points" of that syndrome. Fibromyalgia itself does not constitute a disability.  It represents a complex of symptoms rather than a unique disease process. Any limitations caused by fibromyalgia are adequately addressed by considering the several severe impairments or symptoms that are a part of that diagnosis.

(Id.)

Here, Plaintiff's diagnosis of fibromyalgia is undisputed. Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).  The ALJ's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. MacGregor v. Bowen, 786 F.2d 1050, 1053-54 (11th Cir. 1986). Accordingly, the court must determine whether good cause exists to reject Dr. Silverfield's opinion.

Although the ALJ recognized Plaintiff's diagnosis of fibromylgia, she rejected Dr. Silverfield's opinion because it was not supported by a rheumatology evaluation. (T 17) Plaintiff, however, provides proof that Dr. Silverfield is a certified rheumatologist in the state of Florida. (Dkt. 17-3 at 1) Defendant does not dispute Dr. Silverfield's credentials as a specialist in rheumatology. (Dkt. 18 at 8-10)

Rheumatologists may be better qualified to determine the effects of fibromyalgia because not all doctors are trained to recognize this disorder. See Stewart v. Apfel, 245 F.3d 793, 2000 U.S. App. LEXIS 33214 at *8 (11th Cir. Dec. 20, 2000) (citation omitted); see also Burroughs v. Massanari, 156 F. Supp. 2d 1350, 1367 (N.D. Ga. 2001)(acknowledging that a specialist in rheumatology is better qualified to diagnose fibromyalgia and determine its effects on an individual); 20 C.F.R. § 404.1527(d)(5) (stating that specialists' opinions on medical issues related to their area of specialty are generally given more weight).

In addition, Plaintiff's medical records support Plaintiff's assertion that Dr. Silverfield conducted a rheumatology evaluation. Although some of Dr. Silverfield's notes are illegible, when he examined Plaintiff on May 14, 2003, he made notations under the "Rheumatologic Exam" section of her

12

examination form. (T 149)  Thus, ALJ erred in determining that Dr. Silverfield's opinion "is not supported by a rheumatology evaluation."[6]  (T 17)

The ALJ also rejected Dr. Silverfield's opinion because it was not supported by pertinent laboratory testing or the classic "trigger points" of the fibromyalgia.  (T 17)  Defendant argues that Dr. Silverfield's medical notes do not include a chart marking the location of Plaintiff's multiple trigger points or any written discussion explaining the location and onset of Plaintiff's trigger points.  (Dkt. 18 at 9)  Defendant also asserts that Dr. Silverfield's opinion is inconsistent with Plaintiff's medical records.  (Id.)

Fibromyalgia causes pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues. Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). Fibromyalgia is unique and because of the unavailability of objective clinical tests, it is difficult to determine the severity of the condition and its impact on one's ability to work. Morrison v. Barnhart, 278 F. Supp. 1331, 1335 (M.D. Fla. 2003).  Because fibromyalgia is a common, but elusive and mysterious disease, it is diagnosed on the basis of patients'

---

[6]  Dr. Silverfield's records span the time period from October 23, 2000 through December 5, 2003.  (T 149-160, 266-74)

reports and other symptoms. See Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004); Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996). The Eleventh Circuit has observed:

> '[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.' Thus, a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader.

Stewart, 245 F. 3d 793, 2000 U.S. App. LEXIS 33214 at *8 (citation omitted). Therefore, contrary to the ALJ's decision, objective evidence establishing the diagnosis is not required to find that an applicant is disabled by fibromyalgia. Id.; Moore v. Barnhart, 114 Fed. Appx. 983, 991 (10th Cir. 2004)(ALJ's requirement that claimant provide objective evidence to support fibromyalgia diagnosis reflected ALJ's fundamental misperception of the nature of the disease).

Moreover, although objective evidence is not required to establish a diagnosis of fibromyalgia, Plaintiff's medical records may contain clinical support for Dr. Silverfield's diagnosis. Plaintiff's medical records indicate she received numerous injections for her pain. (T 149-153, 156, 268) Indeed, the ALJ notes that Dr. Silverfield apparently "administered a

14

pallative injunction on several occasions." (T 14) Objective, clinical support for a diagnosis of fibromyalgia may also be present if injections of pain medication to the trigger points are prescribed. Rutledge v. Barnhart, 391 F. Supp. 2d 1057, 1062 (N.D. Ala. 2005), citing Kelley, 133 F.3d at 589. From the record, it is unclear if Plaintiff received some or all of the injections to the trigger points associated with fibromyalgia.

Finally, Dr. Silverfield's diagnosis of fibromyalgia could be consistent with Plaintiff's complaints of pain in her hips, wrists and thumbs, upper legs and left knee and sleeping problems. See Webster v. Barnhart, 343 F. Supp. 2d 1085 (N. Ala. 2004)(the symptoms of fibromyalgia are subjective pain all over, fatigue, disturbed sleep and stiffness). Dr. Silverfield treated Plaintiff from October 23, 2000 to December 5, 2003. (T 149-160, T 266-74) On May 14, 2003, Dr. Silverfield noted that some of Plaintiff's symptoms included lower back pain and numbness in her thigh. (T 149) Dr. Silverfield concluded that Plaintiff's fibromyalgia was an established diagnosis, not a new diagnosis. (Id.) On December 5, 2003, Dr. Silverfield examined Plaintiff and again diagnosed Plaintiff as suffering from fibromyalgia. (T 267) During Plaintiff's three-year treatment with Dr. Silverfield, Dr. Silverfield documented Plaintiff's complaints regarding bursitis in her shoulder, arthritis, muscle spasms,

15

disturbed sleep and joint pain in her hips, wrists and thumbs, upper legs and left knee.[7] (T 149-160, T 266-74)

The regulations provide:

> [g]enerally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). Accordingly, the ALJ erred in her failure to either give substantial weight to the opinion of the treating physician or to show good cause for not doing so.

Accordingly, a remand is warranted for the ALJ to properly evaluate Dr. Silverfield's findings and opinions consistent with the pertinent case law and the fact that Dr. Silverfield, a rheumatologist, did conduct a rheumatological evaluation. If, on remand, the Commissioner determines that Plaintiff has fibromyalgia and that the condition is a severe impairment, the

---

[7] At the hearing, Plaintiff stated she experiences multiple joint problems, sleep apnea, sleep disturbance, arthritis, bursitis, pain her head, neck, lower back, shoulder, hip, right leg, left knee and neck spasms. (T 304-310, 312, 317-319) Plaintiff also asserted that she some time suffers from flu like symptoms, low grade fever, body weakness and an achy feeling. (T 315)

16

Commissioner shall proceed to evaluate Plaintiff's application for disability benefits in connection wit the sequential review process.

**B.** Plaintiff contends that the ALJ erred by failing to utilize a Vocational Expert ("VE") in determining that Plaintiff can perform other work. (Dkt. 18 at 14-15)

If remand is required on some of the issues raised in the case, it may be unnecessary to review other objections to the ALJ's conclusion. See generally Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991). Accordingly, it is unnecessary to address this argument.

## CONCLUSION

While concluding that remand for further fact-finding is necessary due to errors at the administrative level, this court expresses no views as to what the outcome of the proceedings should be. At the reopened hearing, each party should have the opportunity to submit additional evidence.

Accordingly and upon consideration it is **ORDERED** and **ADJUDGED** that:

(1) The decision of the Commissioner be **REVERSED** and the case be **REMANDED** for further proceedings and consideration consistent with the foregoing; and

(2) The Clerk of Court enter final judgment pursuant to 42

U.S.C. § 405(g) as this is a "sentence four remand." <u>Shalala v. Schaefer</u>, 509 U.S. 292, 302-03 (1993); <u>Newsome v. Shalala</u>, 8 F.3d 775, 779-80 (11th Cir. 1993).

**DONE AND ORDERED** in Tampa, Florida this 21st day of August, 2006.